GLAUBIUS v GLAUBIUS

Docket No. 318750. Submitted July 9, 2014, at Detroit. Decided July 15,
      at 9:10 a.m. Leave to appeal sought.

    Jenny N. Glaubius (plaintiff) and John A. Glaubius (defendant) were
      divorced in the Macomb Circuit Court in February 2013. One child
      had been born during the time of their marriage. The parties had
      joint legal custody, and plaintiff had physical custody of the child.
      Plaintiff moved in June 2013 under the Revocation of Paternity
      Act, MCL 722.1431 *et seq.*, to revoke defendant's paternity as a
      presumed father, specifically seeking a determination that the
      child had been born out of wedlock as defined in MCL 722.1441
      and asking the court to vacate portions of the divorce judgment
      regarding custody, parenting time, and child support. Plaintiff
      asserted that Joseph Witt, a man with whom she had been sexually
      involved during her marriage to defendant, was actually the child's
      biological father. Plaintiff maintained that at the time of the
      divorce, she believed that defendant was the child's biological
      father and that it was only later that a DNA test established Witt's
      paternity. The court, Kathryn A. Viviano, J., denied plaintiff's
      motion, and plaintiff appealed.

    The Court of Appeals *held*:

    1. The Revocation of Paternity Act provides the methods for
setting aside acknowledgments of paternity and determinations
and judgments related to paternity, as well as the measures for
overcoming the presumption of legitimacy. The proofs and circum-
stances necessary to revoke paternity differ depending on the
classification of paternity at issue. MCL 722.1433 recognizes four
classifications of fathers: (1) an acknowledged father (a man who
has affirmatively held himself out as the child's father by execut-
ing an acknowledgment of parentage), (2) an affiliated father (a
man who was determined in a court to be the child's father), (3) an
alleged father (a man who by his actions could have fathered the
child), and (4) a presumed father (a man who is presumed to be the
child's father by virtue of his marriage to the child's mother at the
time of the child's conception or birth). The Revocation of Pater-
nity Act details the methods applicable to the revocation of each
specific type of paternity, but under MCL 722.1439(1) there is no

express provision for setting aside an order that established a man as an affiliated father when he participated in the court proceedings determining his paternity. The parties did not contend that defendant was an acknowledged father, and Witt, not defendant, was the alleged (that is, biological) father. The dispute concerned whether defendant was a presumed father, as plaintiff contended, or an affiliated father, as defendant contended. Plaintiff alleged that defendant's fatherhood arose by operation of the presumption of legitimacy, while defendant asserted that his status as the child's father had been determined in the divorce proceedings, that is, that the divorce judgment was an order of filiation. Because defendant participated in the divorce proceedings, he maintained that his paternity as an affiliated father could not be revoked under MCL 722.1439(1).

2. Given that defendant was married to plaintiff at the time of the child's conception and birth, he had the status of presumed father under MCL 722.1433(4). At issue, then, was whether defendant continued as a presumed father after the divorce or whether he obtained the status of an affiliated father by virtue of the divorce judgment. Under MCL 722.1433(2) and (5), to decide whether a man qualifies as an affiliated father requires consideration of whether he was determined in a court to be the child's father. An affiliated father exists when a dispute or question over a man's paternity was settled or resolved in a court of law and the court concluded, on the basis of reasoning or observation, that the man is the child's father. There must have been an actual determination of paternity, one in which there was a dispute or question presented regarding the man's paternity and the court in fact resolved the matter. Any judicial order establishing a determination in court that a man was a child's father could demonstrate the determination of an affiliated father within the meaning of MCL 722.1433(2) and (5). If a court made a determination regarding a man's paternity in the course of divorce proceedings and entered an order establishing that determination, the order would establish the man's status as an affiliated father. In this case, however, defendant's paternity was not an issue of dispute between the parties during the course of the divorce and was therefore not a question that the trial court actually resolved. Plaintiff did not allege, defendant did not assert or deny, and the trial court did not actually ascertain that defendant was in fact the child's father. Rather, plaintiff's complaint and the divorce judgment adhered to the presumption of legitimacy, treating defendant as the presumed father of the child and awarding visitation and custody in light of his capacity as a presumed father. If the parties to a divorce action proceed in keeping with this presumption of

legitimacy and do not contest the issue of paternity in the course of the divorce, the resulting divorce judgment of does not signify a determination in court that the husband is the father of the child for purposes of the Revocation of Paternity Act. Instead, on the facts of this case defendant qualified as a presumed father and did not become an affiliated father by operation of the divorce judgment.

3. Because defendant was a presumed father rather than an affiliated father, MCL 722.1441(1)(a) applied to plaintiff's efforts to revoke his paternity. That statute provides that a court may determine that the child was born out of wedlock for the purpose of establishing the child's paternity if (1) the mother files an action within three years after the child's birth, (2) the mother identifies the alleged father by name in the complaint or motion commencing the action, (3) the presumed father, the alleged father, and the mother at some time mutually and openly acknowledged a biological relationship between the alleged father and the child, and (4) either the court determines the child's paternity or the child's paternity will be established if the child is determined to have been born out of wedlock. An action under the Revocation of Paternity Act may be brought by a motion in the existing case at any stage of the proceedings. The trial court here retained continuing jurisdiction over child custody, child support, and parenting time, and plaintiff brought her motion in the parties' existing divorce case. Accordingly, the divorce judgment did not preclude plaintiff's efforts to establish that the child was born out of wedlock as defined in MCL 722.1441(1)(a).

4. The doctrine of res judicata bars a subsequent action when (1) the prior action was decided on the merits, (2) the judgment in the prior decision was a final decision, (3) both actions involved the same parties or their privies, and (4) the matter in the second case was or could have been resolved in the first. Before the enactment of the Revocation of Paternity Act, a support order arising from a divorce judgment constituted an adjudication of paternity and, consequently, the doctrine of res judicata precluded a party to the divorce from later challenging paternity. The act, however, authorized postjudgment challenges to paternity in certain circumstances, including those in which paternity was or could have been litigated. Therefore, plaintiff's motion, as a continuation of the divorce proceedings and brought under the Revocation of Paternity Act, was not subject to res judicata.

Reversed and remanded for further proceedings.

1. PATERNITY — REVOCATION OF PATERNITY ACT — PRESUMED AND AFFILIATED FATHERS — DIVORCE JUDGMENT ESTABLISHING AFFILIATED-FATHER STATUS.

The Revocation of Paternity Act, MCL 722.1431 *et seq.*, provides the methods for setting aside acknowledgments of paternity and determinations and judgments related to paternity; MCL 722.1433 recognizes four classifications of fathers: (1) an acknowledged father (a man who has affirmatively held himself out as the child's father by executing an acknowledgment of parentage), (2) an affiliated father (a man who was determined in a court to be the child's father), (3) an alleged father (a man who by his actions could have fathered the child), and (4) a presumed father (a man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth); a man who was married to plaintiff at the time of the child's conception and birth and therefore had the status of presumed father under MCL 722.1433(4) may obtain the status of an affiliated father under MCL 722.1433(2) and (5) after a divorce if there was a dispute or question presented regarding the man's paternity, the court in fact resolved the matter and made an actual determination regarding the man's paternity in the course of the divorce proceedings, and the court entered an order or divorce judgment establishing that determination.

2. PATERNITY — REVOCATION OF PATERNITY ACT — CHILDREN BORN OUT OF WEDLOCK — POSTJUDGEMENT DETERMINATION.

MCL 722.1441(1)(a), a provision of the Revocation of Paternity Act, provides that a court may determine that a child was born out of wedlock for the purpose of establishing the child's paternity if (1) the mother files an action within three years after the child's birth, (2) the mother identifies the alleged father by name in the complaint or motion commencing the action, (3) the presumed father (the man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth), the alleged father (the man who by his actions could have fathered the child), and the mother at some time mutually and openly acknowledged a biological relationship between the alleged father and the child, and (4) either the court determines the child's paternity or the child's paternity will be established if the child is determined to have been born out of wedlock; an action under the Revocation of Paternity Act may be brought by a motion in a case at any stage of the proceedings, including after the entry of a divorce judgment.

*Speaker Law Firm, PLLC* (by *Liisa R. Speaker*), for Jenny N. Glaubius.

*Scott Bassett* for John A. Glaubius.

Before: BECKERING, P.J., and HOEKSTRA and GLEICHER, JJ.

HOEKSTRA, J. In this action involving the Revocation of Paternity Act, MCL 722.1431 *et seq.*, plaintiff appeals as of right the trial court's order denying her motion to revoke defendant's paternity and determine that the minor child in question was born out of wedlock. Because defendant qualifies as a "presumed father" on the facts of this case and the parties' divorce judgment does not preclude an action to overcome the presumption of legitimacy, we reverse and remand for further proceedings consistent with this opinion.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant married on August 30, 2008. During their marriage, plaintiff became pregnant and subsequently gave birth to a daughter on May 18, 2011. On August 1, 2012, plaintiff filed for divorce, including in her complaint the allegation that the "parties have had one (1) child born of this marriage . . . ." Defendant, who had moved to Nebraska, acknowledged receipt of the complaint but failed to respond. As a result, at plaintiff's request, a default entered against defendant. On December 28, 2012, the parties entered into a settlement agreement relating to their divorce, and thereafter the parties appeared before the trial court for a hearing and both consented to the entry of a default divorce judgment. The divorce judgment, which the trial court entered on February 13, 2013, did not make express findings of fact but stated generally that the

complaint had "heretofore ... been taken as confessed ...." Referring to the parties as "Plaintiff-Mother" and "Defendant-Father," the divorce judgment provided that legal custody of the minor child was granted to both parties, while physical custody remained with plaintiff. The divorce judgment also detailed the parties' arrangements for defendant's visitation with the minor child. Defendant's duty to pay child support was waived in exchange for his payment of all travel costs related to visitation with the minor child.

On June 10, 2013, plaintiff filed a motion to revoke defendant's paternity as a "presumed father" under the Revocation of Paternity Act. Specifically, plaintiff's motion sought a determination that the child had been "born out of wedlock" as defined in MCL 722.1441, and she asked the trial court to vacate portions of the divorce judgment regarding custody, parenting time, and child support. According to plaintiff's motion, the child's biological father was actually Joseph Witt, a man with whom plaintiff had been sexually involved during her marriage to defendant. Despite this extramarital relationship, plaintiff maintained that, at the time of her divorce, she believed defendant to be the child's biological father. It was only after the divorce, when a family member remarked on the lack of physical resemblance between the child and defendant, that plaintiff obtained a DNA test, which established with a 99.999% certainty that Witt was the child's biological father.

In support of her motion, plaintiff attached an e-mail from defendant in which defendant arguably acknowledged Witt's biological relationship to the child and stated that he believed the child should have the opportunity "to grow up knowing her real father as daddy ...." In this e-mail, defendant further stated that he was prepared to waive "any legal rights" to the child. In addition, plaintiff provided an affidavit in

which she attested that Witt had acknowledged his paternity and was desirous of establishing a relationship with the child.

Despite his remarks in the e-mail correspondence, defendant opposed plaintiff's motion to revoke his paternity. In opposing plaintiff's motion, defendant argued that plaintiff's characterization of defendant as a "presumed father" under the Revocation of Paternity Act was inaccurate because the divorce judgment established defendant as an "affiliated father." MCL 722.1433(2) and (4). As an affiliated father, defendant asserted that his paternity could not be revoked on the facts of this case because he had participated in the proceedings establishing him as an affiliated father. In a related argument, defendant further asserted, on the basis of principles of res judicata and equitable estoppel, that revocation of his paternity was improper because the default divorce judgment established defendant as the minor child's father.

Following a hearing, the trial court entered an order and opinion denying plaintiff's motion to revoke defendant's parentage. Plaintiff now appeals as of right.[1]

## II. REVOCATION OF PATERNITY ACT

On appeal, plaintiff challenges the trial court's dismissal of her motion to determine that the minor child was born out of wedlock and is not, in fact, defendant's

---

[1] On appeal, defendant argues, without citation to supporting authority, that this Court lacks jurisdiction over this case because "it is not clear that the trial court's order qualifies as an order affecting custody" under MCR 7.202(6)(a)(iii). Contrary to defendant's argument, plaintiff specifically requested that defendant's award of custody and parenting time as set forth in the divorce judgment be vacated. The trial court's order denying this request thus affects custody of a minor under MCR 7.202(6)(a)(iii), and this Court has jurisdiction over this appeal.

child. Specifically, she maintains defendant is a "presumed father" within the meaning of the Revocation of Paternity Act whose paternity may thus be challenged pursuant to MCL 722.1441, regardless of the fact that a divorce judgment establishing child custody, child support, and parenting time had previously been entered by the trial court.

### A. STANDARDS OF REVIEW AND RULES OF INTERPRETATION

When reviewing a decision related to the Revocation of Paternity Act, this Court reviews the trial court's factual findings, if any, for clear error. *Parks v Parks*, 304 Mich App 232, 237; 850 NW2d 595(2014) (citation omitted). " 'The trial court has committed clear error when this Court is definitely and firmly convinced that it made a mistake.' " *Id.* (citation omitted). In contrast, we review de novo the interpretation and application of statutory provisions. *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541; 840 NW2d 743 (2013). To the extent necessary, interpretation of a divorce judgment is also reviewed de novo. *Neville v Neville*, 295 Mich App 460, 466; 812 NW2d 816 (2012).

This case requires interpretation of the Revocation of Paternity Act. When interpreting a statute, we must give effect to the Legislature's intent, which we determine by examining first the language of the statute itself. *Tellin v Forsyth Twp*, 291 Mich App 692, 700-701; 806 NW2d 359 (2011). In doing so, we give effect to every word, phrase, and clause, avoiding a construction that would render part of the statute surplusage or nugatory. *Book-Gilbert*, 302 Mich App at 541. Undefined words are afforded their plain and ordinary meaning, and a dictionary may be consulted to ascertain the common meaning of a term. *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 240; 615 NW2d 241 (2000).

"When the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither necessary nor permitted." *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007).

### B. CLASSIFICATIONS OF FATHERS

In 2012 PA 159, the Legislature enacted the Revocation of Paternity Act, which provides the methods for setting aside acknowledgments of paternity, and determinations and judgments related to paternity, as well as the measures for overcoming the presumption of legitimacy. See *In re Daniels Estate*, 301 Mich App 450, 458-459; 837 NW2d 1 (2013). Under the applicable provisions, the proofs and circumstances necessary to revoke paternity differ depending on the classification of paternity at issue, and, in some respects, depending on the individual seeking the revocation of paternity. Specifically, with regard to the type of paternity at issue, under MCL 722.1433, four classifications of fathers are recognized:

(1) "Acknowledged father" means a man who has affirmatively held himself out to be the child's father by executing an acknowledgment of parentage under the acknowledgment of parentage act, 1996 PA 305, MCL 722.1001 to 722.1013.

(2) "Affiliated father" means a man who has been determined in a court to be the child's father.

(3) "Alleged father" means a man who by his actions could have fathered the child.

(4) "Presumed father" means a man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth.

After identifying the classifications of fathers, the Revocation of Paternity Act details the methods applicable to the revocation of each specific type of paternity. For

example, MCL 722.1437 provides the methods for setting aside an acknowledgement of parentage. MCL 722.1441 governs an action to determine that a child has been "born out of wedlock" and is not in fact a presumed father's child. See *Grimes v Van Hook-Williams*, 302 Mich App 521, 527; 839 NW2d 237 (2013). Lastly, MCL 722.1439 details the process for setting aside an order of filiation, i.e., "a judicial order establishing an affiliated father," MCL 722.1433(5), if the affiliated father did not participate in the proceedings establishing his paternity. Notably, however, no express provision is made for setting aside an order establishing a man as an affiliated father when the man participated in the court proceedings determining his paternity. See MCL 722.1439(1).

### C. ANALYSIS

In the present case, as an initial matter, we must decide what procedures apply to plaintiff's efforts to revoke defendant's paternity. In other words, we must first decide which statutory definition of "father" applies to defendant so that we may ascertain under which statutory provision, if any, plaintiff may seek revocation of defendant's paternity. The parties do not contend that defendant qualifies as an "acknowledged father," and there is no evidence that an acknowledgment of parentage has been signed in this case. See MCL 722.1433(1). Further, it appears that Witt, not defendant, is the "alleged" or biological father of the child. See MCL 722.1433(3). Thus, the specific definitional dispute at issue relates to whether defendant is a "presumed father," as contended by plaintiff, or an "affiliated father," as maintained by defendant. In particular, plaintiff alleges that defendant's fatherhood arose by operation of the presumption of legitimacy,

while defendant asserts that his status as the child's father was determined in the divorce proceedings, meaning that, in defendant's view, the divorce judgment is an order of filiation. Because defendant participated in the divorce proceedings, he maintains that his paternity as an affiliated father may not be revoked under MCL 722.1439(1).

As noted, "presumed father" refers to a man who is "presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth." MCL 722.1433(4). Indeed, Michigan has long recognized that a child conceived or born during an intact marriage is presumed to be a child of the marriage. See *In re KH*, 469 Mich 621, 634-635; 677 NW2d 800 (2004); *People v Case*, 171 Mich 282, 284-285; 137 NW 55 (1912). Given that defendant was married to plaintiff at the time of the child's conception and birth, he plainly obtained the status of presumed father. See MCL 722.1433(4). The foremost issue before this Court thus becomes whether defendant continued as a presumed father after the parties' divorce or whether by virtue of the divorce judgment he obtained the status of an affiliated father.

Relevant to this determination, as noted, the phrase "affiliated father" refers to "a man who has been determined in a court to be the child's father." MCL 722.1433(2). As a related matter, an "order of filiation" in turn refers to "a judicial order establishing an affiliated father." MCL 722.1433(5). Thus, an order of filiation is a judicial order establishing that a man has been determined in a court to be a child's father. Ultimately, to decide whether a man qualifies as an affiliated father requires consideration of whether he has been determined in a court to be the child's father.

According to a basic dictionary definition, to "determine" is "**1.** to settle or resolve (a dispute, question, etc.) by an authoritative or conclusive decision [or] **2.** to conclude or ascertain, as after reasoning or observation." *Random House Webster's College Dictionary* (1992). Applying this basic definition, it follows that an affiliated father exists when, in a court of law, a dispute or question about a man's paternity has been settled or resolved and it was concluded by the court, on the basis of reasoning or observation, that the man is the child's father. Given this understanding, it seems plain that the Legislature intended to recognize the existence of an affiliated father when there was an actual determination of paternity; that is, when there was a dispute or question presented regarding the man's paternity and the matter was in fact resolved by a court. A judicial order establishing this determination would constitute an order of filiation for purposes of the Revocation of Paternity Act.

As plaintiff notes on appeal, determinations regarding a man's paternity might occur, and often do occur, in the context of an action under the Paternity Act, MCL 722.711 *et seq.* Indeed, the Paternity Act expressly provides for the entry of an order of filiation declaring paternity. See MCL 722.717. On appeal, plaintiff argues that it is only an order of filiation entered pursuant to the Paternity Act that qualifies as an order of filiation for purposes of the Revocation of Paternity Act.

Contrary to plaintiff's arguments in this respect, we do not believe that an order of filiation may only arise from the procedures prescribed in the Paternity Act. As defined in the Revocation of Paternity Act, an "order of filiation" is simply "a judicial order establishing an affiliated father"; this definition makes no reference to an order entered pursuant to the Paternity Act. See

MCL 722.1433(5). This general reference to a "judicial order" in MCL 722.1433(5), without reference to the Paternity Act, stands in marked contrast to the Revocation of Paternity Act's definition of an "acknowledged father" as one who executed an acknowledgment of parentage under the Acknowledgment of Parentage Act, MCL 722.1001 *et seq*. See MCL 722.1433(1). Had the Legislature similarly intended to restrict affiliated fathers to those identified through paternity actions, the Legislature would have so specified. See *Book-Gilbert*, 302 Mich App at 542 ("The courts may not read into the statute a requirement that the Legislature has seen fit to omit.").[2] Absent any indication of such specificity, any judicial order establishing a determination in court that a man is a child's father could demonstrate the determination of an affiliated father within the meaning of MCL 722.1433(2). See also MCL 722.1433(5).

To be sure, paternity claims and determinations of paternity frequently arise during divorce or custody disputes, unrelated to actions under the Paternity Act. See *KH*, 469 Mich at 635; *Girard v Wagenmaker*, 437 Mich 231, 246; 470 NW2d 372 (1991). If, in the course of a divorce proceeding, the court makes a determination regarding a man's paternity and correspondingly enters an order establishing this determination, we see nothing in the plain language of MCL 722.1433(2) or (5) to suggest that such a determination in the context of divorce or custody proceedings would not establish a man's status as an affiliated father.

---

[2] Indeed, elsewhere in its provisions, the Revocation of Paternity Act does in fact specifically refer to the Paternity Act and its procedures. See, e.g., MCL 722.1443(2)(d). This express reference to the Paternity Act in one provision of the Revocation of Paternity Act makes plain that its omission from the definitions of "order of filiation" and "affiliated father" was deliberate. See *Book-Gilbert*, 302 Mich App at 541-542.

Of course, not all divorce proceedings squarely address the question of a child's paternity. See, e.g., *Barnes v Jeudevine*, 475 Mich 696, 705-706; 718 NW2d 311 (2006). Whether a particular divorce proceeding resolved the question of paternity will depend on the facts of the particular case and the determinations expressed in the divorce judgment. Specifically, whether divorce proceedings and a resulting divorce judgment establish the man as an affiliated father within the meaning of MCL 722.1433(2) necessarily depends on whether there was a determination in court that the man was the child's father. That is, applying the plain language of the statute as discussed, for a man to have been "determined" in a court to be a child's father, there must have been a dispute or question about the issue of paternity and an actual resolution of the matter by the trial court, culminating in a judicial order establishing the man as the child's father.

On the present facts, we are persuaded that this particular divorce judgment was not a determination of defendant's fatherhood and thus not an order establishing him as an affiliated father. Specifically, in this case, the question of defendant's paternity appears never to have been an issue of dispute between the parties during the course of their divorce, and it was therefore not a question that the trial court actually resolved. Plaintiff alleged in her complaint that there had been one child "born of this marriage," a fact that the divorce judgment took to be "confessed." But nowhere did plaintiff allege, defendant assert or deny, or the trial court actually ascertain that defendant was in fact the minor child's father. Rather, fairly considered, plaintiff's complaint and the ultimate divorce judgment adhered to the presumption of legitimacy, treating defendant as the presumed father of the minor child and awarding visitation and custody in light of defen-

dant's capacity as a presumed father. See generally *KH*, 469 Mich at 635 (recognizing that the presumption of legitimacy remains intact and becomes conclusive if not rebutted during a divorce or custody dispute).

When the parties to a divorce action have proceeded in keeping with this presumption of legitimacy and do not contest the issue of paternity in the course of the divorce, in our judgment, the resulting divorce judgment does not signify a determination in court that the husband is the father of the child for purposes of the Revocation of Paternity Act. Rather, the divorce judgment merely recognizes the continued adherence to the presumption of legitimacy without answering the distinct question of whether the husband is the child's father. Cf. *Barnes*, 475 Mich at 705. Stated differently, in such cases paternity was established by operation of the presumption of legitimacy during the parties' marriage, and absent some challenge to paternity during the course of the divorce, the matter of paternity was simply not at issue in the divorce and not a question "determined" by the trial court's decision. Cf. *Sinicropi v Mazurek*, 273 Mich App 149, 174; 729 NW2d 256 (2006) ("Paternity was not an issue when [the acknowledged father] filed the motion for custody in 2001 because the acknowledgment of parentage had already established paternity."). Accordingly, on the facts of the present case, defendant qualifies as a presumed father and did not become an affiliated father by operation of the divorce judgment.

Given our conclusion that defendant qualifies as a presumed father rather than an affiliated father, it follows that MCL 722.1441(1)(a) applies to plaintiff's efforts to revoke defendant's paternity.[3] Specifically, MCL 722.1441(1)(a) provides:

---

[3] A mother may also seek a determination that the child was born out of wedlock under MCL 722.1441(1)(b) when a presumed father has failed

(1) If a child has a presumed father, a court may determine that the child is born out of wedlock for the purpose of establishing the child's paternity if an action is filed by the child's mother and . . .

(a) All of the following apply:

(*i*) The mother identifies the alleged father by name in the complaint or motion commencing the action.

(*ii*) The presumed father, the alleged father, and the child's mother at some time mutually and openly acknowledged a biological relationship between the alleged father and the child.

(*iii*) The action is filed within 3 years after the child's birth. The requirement that an action be filed within 3 years after the child's birth does not apply to an action filed on or before 1 year after the effective date of this act.

(*iv*) Either the court determines the child's paternity or the child's paternity will be established under the law of this state or another jurisdiction if the child is determined to be born out of wedlock.

Considering this provision, nothing in the plain language of the statute required plaintiff to challenge the presumption of legitimacy in the divorce proceedings or prevents plaintiff from now seeking to challenge defendant's paternity after entry of the divorce judgment. Instead, the only time constraint decreed in this provision requires the filing of an action within 3 years after the child's birth, and this constraint does not apply to actions filed on or before 1 year after the effective date of the act. There is no suggestion in the statute that its provisions cannot apply after a divorce.

On the contrary, following the divorce proceedings, the trial court retained continuing jurisdiction over child custody, child support, and parenting time, and

to support a child or lived apart from the child. The parties agree, however, that this provision is inapplicable in this case.

according to MCL 722.1443(1), when an action for the
support, custody, or parenting time of the child exists,
an action under the Revocation of Paternity Act may be
brought at *any* stage of the proceedings by a motion in
the existing case. And more specifically, an action to
determine that a child was born out of wedlock may be
brought "by a motion filed in an existing action . . . ."
MCL 722.1441(5). By filing her motion in her existing
divorce case, plaintiff has brought such a motion in the
present case. Thus, in sum, in this case the divorce
judgment does not preclude plaintiff's efforts to estab-
lish that the minor child was born out of wedlock, and
on remand plaintiff may seek a determination under
MCL 722.1441(1)(a) that the child was born out of
wedlock.[4]

### III. RES JUDICATA

Before the trial court, and again on appeal, defendant
also argues that the doctrine of res judicata prohibits
plaintiff from attacking a paternity determination that
was made, or could have been made, in the course of
their divorce proceedings. The applicability of the doc-
trine of res judicata presents a question of law that we
review de novo. *Stoudemire v Stoudemire*, 248 Mich
App 325, 332; 639 NW2d 274 (2001).

Res judicata prevents "multiple suits litigating the
same cause of action." *Adair v Michigan*, 470 Mich 105,
121; 680 NW2d 386 (2004). Specifically, the doctrine
bars a subsequent action when "(1) the prior action was

---

[4] On remand, the trial court may determine that the minor child was
born out of wedlock if plaintiff has satisfied MCL 722.1441(1)(a). How-
ever, even if the requirements of MCL 722.1441(1)(a) are met, the trial
court may, of course, refuse to make that a determination "if the court
finds evidence that the order would not be in the best interests of the
child." MCL 722.1443(4).

decided on the merits, (2) the decree in the prior decision was a final decision, (3) both actions involved the same parties or their privies, and (4) the matter in the second case was or could have been resolved in the first." *Stoudemire*, 248 Mich App at 334. Res judicata has been broadly applied, barring "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 470 Mich at 121. Res judicata does not, however, apply to a continuation of a single legal action. *Harvey v Harvey*, 237 Mich App 432, 437; 603 NW2d 302 (1999). Further, res judicata is a "judicially created" doctrine and "must not be applied when its application would subvert the intent of the Legislature." *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 630; 808 NW2d 471 (2010).

Before the enactment of the Revocation of Paternity Act, it had been repeatedly recognized that a support order arising from a divorce judgment constituted an adjudication of paternity and, consequently, the doctrine of res judicata precluded a party to the divorce from later challenging paternity. See *Hackley v Hackley*, 426 Mich 582, 585; 395 NW2d 906 (1986) (opinion by BOYLE, J.); *Hawkins v Murphy*, 222 Mich App 664, 671; 565 NW2d 674 (1997); *Rucinski v Rucinski*, 172 Mich App 20, 22; 431 NW2d 241 (1988); *Baum v Baum*, 20 Mich App 68, 74; 173 NW2d 744 (1969). Defendant now argues on appeal that these cases should continue to control and res judicata should accordingly prevent plaintiff from relitigating the question of paternity.[5]

---

[5] In a related argument, defendant maintains that this line of cases supports his claim that he is an affiliated father because they stand for the proposition that a child support order arising from a divorce is an adjudication of paternity. However, these cases involved the application of res judicata, not a discussion of who qualifies as an affiliated father within the meaning of the Revocation of Paternity Act. Again, MCL 722.1433(2) defines

However, these cases were decided before the enactment of the Revocation of Paternity Act, meaning they were decided on judicial principles of res judicata without consideration of whether the Revocation of Paternity Act legislatively authorized postdivorce challenges to paternity. Considering the Revocation of Paternity Act, we conclude that, in the particular circumstances described in the statute, the Legislature intended to authorize postjudgment challenges to paternity, including for cases in which paternity was or could have been litigated. Further, we are persuaded that this legislative intent would be improperly thwarted by the application of res judicata to bar actions otherwise authorized by the Revocation of Paternity Act.

To begin with, in broad terms, the title of the Revocation of Paternity Act states that it is "AN ACT to provide procedures to determine the paternity of children in certain circumstances; [and] to allow acknowledgments, determinations, and judgments relating to paternity to be set aside in certain circumstances . . . ."[6] 2012 PA 159, title. As the act title makes clear, central to the purpose of the Revocation of Paternity Act is the creation of the ability to revisit and set aside prior

an affiliated father as one who "has been determined" to be the child's father. As we have discussed, this language clearly requires a determination regarding a man's paternity in a case in which the question of his paternity has truly been at issue; that is, there is no indication that a man becomes an affiliated father simply because the presumption of legitimacy went unchallenged during a divorce or a determination of paternity *could* have been made in the course of previous proceedings. In other words, in our view, the Legislature plainly intended an actual determination of paternity. It would thus subvert the Legislature's intent if we held that paternity "has been determined" in every case in which the issue of paternity *could* have been determined.

[6] While an act's title may not be considered authority for construing an act, it is useful for the interpretation of the statute's purpose and scope. *King v Ford Motor Credit Co*, 257 Mich App 303, 311-312; 668 NW2d 357 (2003).

determinations of paternity in specific circumstances. To effectuate this purpose, as we have discussed, the Revocation of Paternity Act allows for the revocation of acknowledgements of parentage, and the setting aside of judicial orders related to paternity. See MCL 722.1443(2). Through the enactment of methods for setting aside judicial determinations of paternity and other established classifications of paternity, the Legislature clearly evidenced an intent to allow relitigation or reconsideration of paternity in certain circumstances, provided that the statutory requirements are met. While we do not suggest that parties may repetitively litigate the question of paternity without end, it would nevertheless clearly subvert the Legislature's intent if we employed res judicata as a categorical bar to all litigation of paternity when paternity had been previously determined by a court, or could have been previously decided.

More specifically, the argument that a child custody determination or a child support order incident to a divorce should always bar later attempts to litigate paternity is particularly unavailing given the plain language of MCL 722.1443(1), which provides that an action under the Revocation of Paternity Act may be brought by motion "at *any* stage of the proceedings" in an action for support, custody, or parenting time. (Emphasis added.) See also MCL 722.1441(5) ("An action [to determine that a child was born out of wedlock] may be brought . . . by a motion in an existing action . . . ."). By its plain terms, this provision authorizes motions at *any* stage, thereby including proceedings after the entry of a divorce judgment. That is, even after the entry of a divorce judgment, a court has continuing jurisdiction over child custody and support determinations, *Harvey v Harvey*, 470 Mich 186, 192; 680 NW2d 835 (2004), including the authority to revise, alter, or amend the

original divorce judgment, *Kelley v Hanks*, 140 Mich App 816, 821; 366 NW2d 50 (1985); MCL 552.17. The duly authorized filing of a motion under the Revocation of Paternity Act in relation to those proceedings may thus be construed as a continuation of the divorce action to which res judicata does not apply. See *Harvey*, 237 Mich App at 437 ("Because the present controversy is a continuation of the parties' original divorce action, and not a separate lawsuit, the doctrine of res judicata is inapplicable here."). Accordingly, plaintiff's motion in the present case, as a continuation of divorce proceedings, would not be subject to res judicata.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

BECKERING, P.J., and GLEICHER, J., concurred with HOEKSTRA, J.