# STATE OF MICHIGAN

# COURT OF APPEALS

SOUTH DEARBORN ENVIRONMENTAL
IMPROVEMENT ASSOCIATION, INC.,
DETROITERS WORKING FOR
ENVIRONMENTAL JUSTICE, ORIGINAL
UNITED CITIZENS OF SOUTHWEST
DETROIT, and SIERRA CLUB,

        Petitioners-Appellees,

v

DEPARTMENT OF ENVIRONMENTAL
QUALITY and DAN WYANT,

        Respondents,

and

AK STEEL CORPORATION,

        Appellant.

FOR PUBLICATION
July 12, 2016
9:00 a.m.

No. 326485
Wayne Circuit Court
LC No. 14-008887-AA

Before: RIORDAN, P.J., and SAAD and M. J. KELLY, JJ.

SAAD, J.

AK Steel Corporation appeals the trial court's denial of its motion to dismiss petitioners' appeal of a decision of respondent Department of Environmental Quality (DEQ) to the circuit court. We affirm the denial of AK Steel's motion to dismiss but on different grounds than the trial court used.

## I. BASIC FACTS

AK Steel operates a steel plant in Dearborn, which used to be operated by Severstal Dearborn, LLC before AK Steel acquired Severstal in September 2014. The plant is subject to regulation under the federal Clean Air Act, 42 USC 7401 *et seq.*, and Michigan's Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.* Beginning in 2005, Severstal applied for and received a series of permits, which authorized the rebuilding of a particular blast furnace and the installation of three air pollution control devices (known as

baghouses).  These permits are known as "permits to install" and are identified as PTI 182-05, PTI 182-05A, and PTI 182-05B.  Each successive permit modified and replaced the preceding permit.  Severstal applied for a fourth permit to update and revise the terms of PTI 182-05B.  Subsequently, a period of public comment was held, and after a public hearing, DEQ issued the new permit, PTI 182-05C, on May 12, 2014.  It is undisputed that this permit also is classified as a "permit to install."

On July 10, 2014, which was 59 days after the permit was issued, petitioners filed a claim of appeal in the circuit court and requested that the court vacate the issuance of PTI 182-05C and remand the matter back to DEQ.  After acquiring Severstal, AK Steel moved to dismiss petitioners' claim of appeal for lack of jurisdiction, on the grounds that the appeal was untimely.  AK Steel argued that pursuant to MCR 7.123(B)(1) and MCR 7.104(A), petitioners had just 21 days after issuance of the permit to file their claim of appeal.  The circuit court rejected AK Steel's argument and agreed with petitioners' that pursuant to MCL 324.5506(14), petitioners had 90 days after issuance of the permit to file their appeal.

## II.  STANDARDS OF REVIEW

We review a court's decision on a motion to dismiss for an abuse of discretion.  *Donkers v Kovach*, 277 Mich App 366, 368; 745 NW2d 154 (2007).  A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes.  *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).  Thus, it necessarily abuses its discretion when it misapplies the law.  *Bynum v ESAB Group, Inc*, 467 Mich 280, 283; 651 NW2d 383 (2002).

This Court reviews the interpretation and application of statutes de novo.  *Glaubius v Glaubius*, 306 Mich App 157, 164; 855 NW2d 221 (2014).  "When interpreting a statute, we must give effect to the Legislature's intent, which we determine by examining first the language of the statute itself."  *Id*.  In doing so, we give effect to every word, phrase, and clause used and avoid an interpretation that would render any part of the provision surplusage or nugatory.  *Id*.  If the statutory language is unambiguous, it constitutes a clear expression of the Legislature's intent and judicial construction is neither necessary nor permitted.  *Id*. at 165.  Further, statutory interpretation requires a holistic approach.  *MidAmerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014).  "A provision that may seem ambiguous in isolation often is clarified by the remainder of the statutory scheme."  *Id.* (quotation marks and citation omitted).  "And [a] general principle of statutory construction is the doctrine of *expressio unius est exclusio alterius*, which means the express mention of one thing implies the exclusion of another."  *Id.* (quotation marks and citation omitted).

## III.  ANALYSIS

### A.  MCL 324.5505 and MCL 324.5506

Analysis of this issue begins with provisions of NREPA, specifically §§ 5505 and 5506.  Section 5505(1) prohibits the installation, construction, reconstruction, relocation, alteration, or modification of "any process or process equipment without first obtaining from the [DEQ] a permit to install, or a permit to operate authorized pursuant to rules promulgated under

-2-

subsection (6) if applicable, authorizing the conduct or activity." MCL 324.5505(1). Appeals from DEQ's decisions to issue or deny a permit are addressed in §§ 5505(8) and 5506(14).

Section 5505(8) states:

> Any person may appeal the issuance or denial by the [DEQ] of a permit to install, a general permit, or a permit to operate authorized in rules promulgated under subsection (6), *for a new source* in accordance with . . . MCL 600.631. Petitions for review shall be the exclusive means to obtain judicial review of such a permit and shall be filed within 90 days after the final permit action, except that a petition may be filed after that deadline only if the petition is based solely on grounds arising after the deadline for judicial review. Such a petition shall be filed no later than 90 days after the new grounds for review arise. *Appeals of permit actions for existing sources are subject to section 5506(14).* [MCL 324.5505(8) (emphasis added).]

The substantive provisions of § 5505(8) clearly apply only to new sources. The permit at issue in this case is for an existing source, an appeal of which, according to § 5505(8), is subject to § 5506(14).

Section 5506(14), in turn, provides the following:

> A person who owns or operates an existing source that is required to obtain an operating permit under this section, a general permit, or a permit to operate authorized under rules promulgated under section 5505(6) may file a petition with the [DEQ] for review of the denial of his or her application for such a permit, the revision of any emissions limitation, standard, or condition, or a proposed revocation of his or her permit. This review shall be conducted pursuant to the contested case and judicial review procedures of the administrative procedures act . . . being [MCL 24.201 to MCL 24.328]. *Any person may appeal the issuance or denial of an operating permit in accordance with [MCL 600.631]. A petition for judicial review is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action.* Such a petition may be filed after that deadline only if it is based solely on grounds arising after the deadline for judicial review and if the appeal does not involve applicable standards and requirements of the acid rain program under title IV. Such a petition shall be filed within 90 days after the new grounds for review arise. [Emphasis added.]

The first portion of this provision allows for owners or operators of existing sources to file a petition with the DEQ in order to obtain a review of the denial of an operating permit, a general permit, or a permit to operate authorized under rules promulgated under § 5505(6). If the owner or operator files such a petition, the review is conducted in accordance with the Administrative Procedures Act (APA), MCL 24.201 *et seq.* If the APA applies, the appeal is governed by MCR 7.119(B)(1), which states that judicial review of a final agency decision or order is obtained by filing a claim of appeal in the circuit court within 60 days after the mailing of the notice of the agency's final decision or order. However, this portion of § 5506(14) does

-3-

not apply to the instant matter because an entity other than an owner or operator is seeking judicial review of a decision to issue a permit.

The parties agree that the resolution of this issue lies with the interpretation of the following portion of § 5506(14), which provides:

> Any person may appeal the issuance or denial of an *operating permit* in accordance with [MCL 600.631]. A petition for judicial review is the exclusive means of obtaining judicial review of *a permit* and shall be filed within 90 days after the final permit action. [Emphasis added.]

There is no question that the first sentence pertains only to appeals related to the issuance or denial of *operating permits*. The parties differ on whether the second sentence above, which mentions "a permit," refers to the "operating" permit from the preceding sentence or "any" permit. See *Allstate Ins Co v Freeman*, 432 Mich 656, 744; 443 NW2d 734 (1989), citing *Black's Law Dictionary* (5th ed) (noting that the article "a" often is used to mean "any"). The circuit court, while acknowledging that the second sentence "appears within the context of this subsection's discussion of operating permits," nonetheless ruled that the second sentence allowed the appeal of any permit based exclusively on the view that "a" is to be interpreted as "any."

We disagree with the circuit court's ultimate interpretation and agree with AK Steel that the sentence in question refers to the preceding sentence. Thus, the statement, "A petition for judicial review is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action," simply relates back to the preceding sentence, which described how any person can appeal the issuance or denial of an *operating permit*. See *Wolverine Power Supply Coop v Dep't of Environmental Quality*, 285 Mich App 548, 563; 777 NW2d 1 (2009) (stating that the second portion of subsection 14 details the "review of the issuance or denial of an operating permit"). The circuit court erred by ignoring the plain context of the section and placing far too great an importance on the Legislature's use of the indefinite article "a." Our Supreme Court has warned that erroneous interpretations can occur when statutory provisions are read in isolation. *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). Instead, the context of such provisions is paramount, which requires that they "be read as a whole." *Id.*; see also *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003) ("[W]ords in a statute should not be construed in the void, but should be read together to harmonize the meaning, giving effect to the act as a whole.") (quotation marks and citation omitted); *People v Vasquez*, 465 Mich 83, 89; 631 NW2d 711 (2001) ("[I]n seeking meaning, words and clauses will not be divorced from those which precede and those which follow.") (quotation marks and citation omitted). Accordingly, reading the subsection as a whole, it is clear that the Legislature did not intend for this particular sentence to refer to *any* permit, as the circuit court concluded. Indeed, if this were true, then there would be no need to have any discussion related to other avenues for appeal, as this provision would apply to the appeal of any and all permits. This is contrary to our long-established rules of statutory interpretation, where we seek to avoid an interpretation that would render any part of the statute

-4-

surplusage or nugatory.[1]  *Glaubius*, 306 Mich App at 164.  We also note that the Legislature was not required "to be overly repetitive in its choice of language."  *Robinson*, 486 Mich at 16. While it could have used language that repeated the "operating" descriptor, it did not need to do so.

Therefore, we hold that MCL 324.5506(14) describes two different appeals.  The first half of this subsection, which is not pertinent to our case, describes how an owner of an existing source can appeal the denial of a permit.  The second half of MCL 324.5506(14) pertains exclusively to how any person may appeal the issuance or denial of an operating permit related to an existing source.  The sentence at issue in this subsection, "A petition for judicial review is the exclusive means of obtaining judicial review of a permit and shall be filed within 90 days after the final permit action," is not to be read in isolation.  Instead, when read in context, it refers to the preceding sentence, which clarifies that the permit in question is an operating permit.  And because the permit at issue is a permit to install, and not an operating permit, this provision simply does not apply.

Petitioners argue that our interpretation would mean that the Legislature singled out permits to install for existing sources as the only type of permit for which there would be no right of review under the statutory scheme.  But "[i]t is not the role of the judiciary to second-guess the wisdom of a legislative policy choice; our constitutional obligation is to interpret—not rewrite—the law."  *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 149; 644 NW2d 715 (2002); see also *Bonner v City of Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014); *People v Tucker*, 312 Mich App 645, 678; 879 NW2d 906 (2015).

B.  MCL 600.631

The parties correctly acknowledge that if the NREPA does not provide for a means for petitioners to appeal the DEQ's issuance of PTI 182-05C, then MCL 600.631 of the Revised Judicature Act, MCL 600.101 *et seq.*, applies.  MCL 600.631 states the following:

> An appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules form which an appeal or other judicial review has not otherwise been provided for by law, to the circuit court of the county of which the appellant is a resident or to

---

[1] Petitioners also claim that to avoid this situation, "a permit" refers only to permits for existing sources.  But, ironically, one can only get this interpretation by looking at the context of both MCL 324.5505(8), which notes in its last sentence that "[a]ppeals of permit actions for existing sources are subject to section 5506(14)," and earlier in MCL 324.5506(14), which refers to "an existing source."  However, this runs contrary to their main argument that the indefinite article "a" refers to, literally, "any" permit.  Although we agree that context matters, petitioners have not provided any persuasive reason for allowing the cherry-picking of which context to use.  In other words, while petitioners would use claim that, from context, the term "a permit" refers to "any permit related to an existing source," we cannot ignore the immediately preceding sentence, which specifies that the permit in question must also be for an "operating permit."

the circuit court of Ingham county, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases. *Such appeals shall be made in accordance with the rules of the supreme court.* [Emphasis added.]

Petitioners argue that the applicable court rule is MCR 7.119, which provides, in pertinent part:

**(A) Scope.** This rule governs an appeal to the circuit court from an agency decision where MCL 24.201 *et seq.* applies. Unless this rule provides otherwise, MCR 7.101 through MCR 7.115 apply.

**(B) Appeal of Right.**

(1) *Time Requirements.* Judicial review of a final decision or order shall be by filing a claim of appeal in the circuit court within 60 days after the date of mailing of the notice of the agency's final decision or order. . . .

Consequently, if this rule applies, then the appeal was proper, as petitioners filed their appeal in the circuit court 59 days after the issuance of the permit. If not, then the catch-all provision in MCR 7.123 would apply, which states that the timing requirements of MCR 7.104(A) are used. MCR 7.104(A), in turn, states that an appeal must be filed within 21 days after the order is issued. As a result, if the catch-all provision of MCR 7.123 is used, petitioners' appeal would have to be dismissed as untimely.

Thus, the resolution of this case depends on whether the DEQ's decision to grant PTI 182-05C is a "decision where MCL 24.201 *et seq.* [the APA] applies." We hold that it does.[2]

On appeal, petitioners claim that the decision to grant a permit is the equivalent of granting a license, which is covered under Chapter 5 of the APA, MCL 24.291 *et seq.* We agree. MCL 24.205(1) defines a "license" as including "the whole or part of an agency permit, certificate, approval, registration, charter, or similar form of permission required by law, but does not include a license required solely for revenue purposes, or a license or registration issued under the Michigan vehicle code . . . ." And MCL 24.205(2) defines "licensing" as including "agency activity involving the grant, denial, renewal, suspension, revocation, annulment, withdrawal, recall, cancellation, or amendment of a license." Accordingly, with MCL 24.205(1) expressly referencing a "permit," the permit in question is a license and the grant of the permit was an act of licensing. See also Department of Environmental Quality, *Air Permits (Permits to Install)* <https://www.michigan.gov/deq/0,4561,7-135-3310_70487-11390--,00.html> (accessed July 7, 2016) ("A Permit to Install is a state license to emit air contaminants into the ambient air.").

---

[2] Initially, we note that the DEQ is an agency under the APA, as MCL 24.203(2) defines "agency" as "a state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action." But this is not the end of the inquiry, as the statute requires that the APA must apply to the *decision*, itself.

The relevant provisions of Chapter 5 of the APA include MCL 24.291, which states:

(1) When licensing is required to be preceded by notice and an opportunity for hearing, the provisions of this act governing a contested case apply.

(2) When a licensee makes timely and sufficient application for renewal of a license or a new license with reference to activity of a continuing nature, the existing license does not expire until a decision on the application is finally made by the agency, and if the application is denied or the terms of the new license are limited, until the last day for applying for judicial review of the agency order or a later date fixed by order of the reviewing court. This subsection does not affect valid agency action then in effect summarily suspending such license under [MCL 24.292].

Here, the issuance of the permit, i.e., the licensing, was required to be preceded by notice and an opportunity for a hearing.[3] Thus, according to MCL 24.291(1), the provisions of the APA that relate to a contested case, i.e., Chapter 4 of the APA, apply. And because these provisions applied, that means that the APA applied to the decision to grant PTI 182-05C. As a result, we hold that MCR 7.119 governs and that petitioners had 60 days to appeal the DEQ's issuance of the permit to the circuit court. Since their appeal to the circuit court was within this 60-day period, their appeal was timely, and the circuit court's ultimate decision to deny AK Steel's motion to dismiss for lack of jurisdiction was correct. Although the court erred in applying the provisions of the NREPA, we will not reverse when the lower court reaches the correct result, albeit for the wrong reason. *Neville v Neville (On Remand)*, 295 Mich App 460, 470; 812 NW2d 816 (2012).

Affirmed. Because the appeal involves an issue of public concern, no costs are taxed under MCR 7.219.

/s/ Henry William Saad
/s/ Michael J. Riordan
/s/ Michael J. Kelly

---

[3] Indeed, notice was provided of the public comment period, which was held from February 12, 2014, through March 19, 2014, and of the public hearing, which was held on March 19, 2014.