*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD S. KLIMKEWICZ,

        Plaintiff-Appellant,

v

SARAH L. KLIMKEWICZ,

        Defendant-Appellee.

UNPUBLISHED
September 19, 2024

No. 364783
Saginaw Circuit Court
Family Division
LC No. 18-037321-DM

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Plaintiff appeals by delayed leave granted[1] the trial court's order denying his motion to revoke paternity of the minor child, LMK. We affirm.

## I. FACTUAL BACKGROUND

This action concerns whether the trial court followed the proper procedures under the Revocation of Paternity Act (ROPA), MCL 722.1431 *et seq*., when deciding plaintiff's motion to revoke paternity. The record indicates that the parties were married in 2006. Sometime afterward, defendant moved to Traverse City and became romantically involved with another man. LMK was conceived during that time, and was born in 2010. There is no dispute that plaintiff is not LMK's biological father. Plaintiff was aware of that fact from the time he learned of defendant's pregnancy. Both plaintiff and defendant agreed that plaintiff would raise LMK as his own son. In the years following LMK's birth, plaintiff and defendant attempted to salvage their marriage, but were ultimately unsuccessful. In 2018, plaintiff filed for divorce. A consent judgment of divorce

---

[1] *Klimkewicz v Klimkewicz*, unpublished order of the Court of Appeals, entered June 20, 2023 (Docket No. 364783). This Court dismissed without prejudice a prior appeal as of right for lack of jurisdiction. See *Klimkewicz v Klimkewicz*, unpublished order of the Court of Appeals, entered November 29, 2022 (Docket No. 363789).

was entered in March 2019. The parties both affirmatively represented to the court that LMK was a child of the marriage. The consent judgment granted the parties joint legal and physical custody of LMK. The parties agreed that plaintiff would not be required to pay child support and they opted out of Friend of the Court (FOC) services. The parties were required to maintain health insurance for LMK, and plaintiff agreed to pay for "any uninsured medical expenses." There was nothing in the divorce judgment indicating a dispute over the child's paternity.[2]

In December 2020, defendant moved to opt back into FOC services and to modify custody and parenting time. She also requested child support. In a later motion, defendant explained that the 2020 motion was "called off" based on an agreement between the parties. In January 2022, defendant again moved for a change of custody and parenting time, claiming that LMK was "adamant that he does not want contact with the Plaintiff. [Plaintiff] has not attempted to see and or contact the child for several months." Defendant filed another motion in January 2022, in which she again requested child support.

In April 2022, plaintiff moved to revoke his paternity of LMK. Plaintiff argued that "MCL 722.1441(2) allows a presumed father to bring an action . . . to determine that the child was born out of wedlock, and not the natural child of the Plaintiff." Plaintiff contended that the parties had agreed to no payment of child support "based in part on the clearly dysfunctional and non-traditional relationship that had occurred to date." Plaintiff maintained that the parties had known that plaintiff was not LMK's biological father and that "[LMK] disavows any relationship with the Plaintiff, and does not look to or consider the Plaintiff his Father."

Plaintiff asserted that the reason paternity was not addressed during "the divorce was, while good intentioned but grossly misguided, in part to allow for [LMK] to remain on the health insurance of the Plaintiff." He explained that a disagreement had come up between himself and defendant because defendant wanted to move to Traverse City with LMK. As a result of that disagreement, plaintiff claimed that defendant "began to position [LMK] to be defiant towards" plaintiff in order to try to force plaintiff to agree to the move. Plaintiff affirmed that he eventually agreed to the move "after the relationship had been destroyed to the point at which no bond existed between" him and LMK. Plaintiff requested that the judgment of divorce be changed to reflect that he is not LMK's biological father "and therefor[e] has no parental rights or obligations regarding said child based on the information contained in the affidavit and upon other good and equitable means." Plaintiff argued that his motion was permitted under Michigan law even after the consent judgment of divorce was entered.

At a hearing on the matter, defendant's counsel argued that plaintiff could not bring an action challenging paternity because under the law, he had to do so within three years of LMK's birth. Defendant's counsel also contended that there was "no justification to extend the three years

---

[2] In response to plaintiff's motion to revoke paternity, defendant argued that the parties first filed for divorce "in Bay County sometime before 2010." She did not support this statement with documentary evidence. According to defendant, it was during this time that she moved to Traverse City, became romantically involved with the biological father, and became pregnant with LMK. Defendant further claimed that she and plaintiff lived together as a family for 10 years, before plaintiff had multiple extramarital affairs that ultimately ended the relationship.

because they have always known that he was not the biological father of this child." Relying on *Glaubius v Glaubius*, 306 Mich App 157; 855 NW2d 221 (2014), plaintiff's counsel maintained that there was no duty on plaintiff's part to challenge paternity during the divorce proceedings and that nothing prevented him from challenging it now. Defendant's counsel countered that the three-year limit still applied to a presumed father and that *Glaubius* was distinguishable because that case involved a father who did not know during the divorce proceedings that he was not the child's biological father. The trial court asked the parties to submit briefing on the arguments, and the hearing was adjourned.

In her brief, defendant agreed that plaintiff was LMK's presumed father because she had been married to plaintiff when LMK was conceived. Defendant contended that unless a motion for revocation of paternity was brought within three years after a child's birth, paternity could not be revoked "unless there is good cause." Defendant additionally maintained that the divorce was predicated on the understanding that plaintiff "would remain financially responsible for the child." Defendant argued that LMK's biological father had no relationship with LMK and lived in a different state. According to defendant, plaintiff's motion "is about [him] preferring to bastardize the child that he has raised for twelve years in order to avoid paying child support. The requested relief is not in the child's best interests and should be denied with prejudice."

Plaintiff argued that defendant incorrectly cited and applied the standard for revoking the paternity of an "acknowledged father" despite plaintiff's being a "presumed father." According to plaintiff, when parties to a divorce never contest paternity, it merely creates a presumption of paternity, not a dispositive determination of paternity, meaning that he was LMK's presumed father. Plaintiff again contended that a revocation of paternity was permitted even after a judgment of divorce was entered.

A hearing was held in August 2022, during which the trial court denied plaintiff's motion to revoke paternity. The court reasoned:

> This gentleman raised this child as his own for years. I understand . . . that he said you're not my dad. That is every kid in that same situation when they get to that age and they get a little cocky. He is going to recognize everything you did for him some day. And hopefully his mother tells him everything you did for him and allows you to have a continuing relationship with him. Because you did raise him as your son. And, you stepped up to the plate, and I think you will, again, have a relationship with him.
>
> The Court has to look very closely before it would terminate a paternity after that many years. Normally it's required they come in within the first couple of years if there is any question. You didn't do that because you were raising him as your own. And for that reason the Court is going to deny the revocation of paternity.

The court subsequently entered an order denying plaintiff's motion to revoke paternity for the reasons stated on the record. Plaintiff moved for reconsideration, but the motion was likewise denied. This appeal followed.

## II. ANALYSIS

Plaintiff argues that he is LMK's presumed father. He contends that because he is LMK's presumed father, the ROPA allowed him to file a postjudgment motion to revoke paternity. We disagree.

"When reviewing a decision related to [ROPA], this Court reviews the trial court's factual findings, if any, for clear error." *Glaubius*, 306 Mich App at 164. Clear error occurs "when this Court is definitely and firmly convinced that [the trial court] made a mistake." *Id.* (quotation marks and citation omitted). Finally, we review de novo the interpretation of applicable statutory provisions. *Id.* "To the extent necessary, interpretation of a divorce judgment is also reviewed de novo." *Id.*

"All matters of statutory interpretation begin with an examination of the language of the statute." *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018). If a statute is unambiguous, it "must be applied as written." *Id.* (quotation marks and citation omitted). We will not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id.* (quotation marks and citation omitted). Furthermore, statutory language "cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme." *Id.* (quotation marks and citation omitted). In other words, a statute must be read as a whole. *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). "Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). Finally, courts "give undefined statutory terms their plain and ordinary meanings." *Id.*

As noted, plaintiff claims that he is LMK's presumed father. Under the ROPA, a "[p]resumed father" is "a man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth." MCL 722.1433(e). "Michigan has long recognized that a child conceived or born during an intact marriage is presumed to be a child of the marriage." *Glaubius*, 306 Mich App at 167. Here, because plaintiff and defendant were married "at the time of the child's conception and birth, [plaintiff] plainly obtained the status of presumed father." See *id.*[3]

Given that plaintiff is LMK's presumed father, MCL 722.1441(2) of the ROPA applies to this matter. The statute provides:

> If a child has a presumed father, a court may determine that the child is born out of wedlock for the purpose of establishing the child's paternity if an action is

---

[3] As an initial matter, plaintiff faults the trial court for failing to explicitly address his status as a presumed father. While it is true that the court did not address this matter, the error is not dispositive. The record shows that defendant conceded that plaintiff was LMK's presumed father; thus, any failure on the court's part was harmless. See *Nahshal v Fremont Ins Co*, 324 Mich App 696, 717; 922 NW2d 662 (2018) ("A trial court's error is harmless if, based on review of the entire record, it is more probable than not that the error was not outcome determinative[.]").

filed by the presumed father *within 3 years after the child's birth* or *if the presumed father raises the issue in an action for divorce or separate maintenance* between the presumed father and the mother. The requirement that an action be filed within 3 years after the child's birth does not apply to an action filed on or before 1 year after the effective date of this act. [Emphasis added.]

In the trial court, defendant erroneously argued that plaintiff could only bring the action within three years of LMK's birth, and that this limitations period could only be dispensed with for "good cause." This is not accurate. In *Taylor v Taylor*, 323 Mich App 197, 199; 916 NW2d 652 (2018), we held that the "or" in MCL 722.1441(2) is disjunctive. Consequently, we explained that "the Legislature intended exactly what it said. The presumed father may raise the issue in a paternity action filed within three years of the child's birth OR in a divorce action (without regard to the child's age)." *Id*. at 201.

There is no dispute that the three-year limit on bringing a ROPA action does not apply. Plaintiff's motion to revoke paternity was brought in 2022, 12 years after LMK's birth. Likewise, it was not brought as part of an action for divorce or separate maintenance. Thus, it would appear that MCL 722.1441(2) bars plaintiff from bringing a ROPA action altogether. However, plaintiff contends that he should be permitted to bring this postjudgment ROPA action because he is merely LMK's presumed father, meaning that paternity was never established by a court. As earlier noted, the issue of paternity was not disputed or addressed in the parties' judgment of divorce or in any other proceeding prior to plaintiff's current attempt to revoke paternity. Indeed, by signing the consent judgment the parties conceded paternity despite knowing from the child's conception that plaintiff was not the biological father. It is also noteworthy that plaintiff provided sworn testimony at the pro confesso hearing wherein he acknowledged LMK as his child. Plaintiff claims that under *Glaubius*, in order for there to be a determination that a man is a child's father, "there must have been a dispute or question about the issue of paternity and an actual resolution of the matter by the trial court, culminating in a judicial order establishing the man as the child's father." *Id*. at 169. Since no dispute existed and paternity was never established by a court, plaintiff reasons that he should now be permitted to revoke paternity.

Plaintiff's attempt to use *Glaubius* to his advantage is unavailing. The language quoted by plaintiff, *supra*, was discussed in *Glaubius* in the context of establishing whether a man is an affiliated father, not a presumed father. See *id*. at 169. Plaintiff makes no attempt to explain why we should find it persuasive in the instant matter, particularly given that he maintains that he is the child's presumed father and should remain so. His main point appears to be that, because the plaintiff in *Glaubius* was permitted to bring a postjudgment ROPA action, he should also be able to bring a postjudgment ROPA action. We find *Glaubius* distinguishable from the instant case. *Glaubius* involved a paternity action in which the plaintiff believed that the defendant was the child's biological father when the judgment of divorce was entered. *Id*. at 162. It only became apparent that the defendant was not the child's father *after* the judgment was entered, at which point the plaintiff filed an action to revoke the defendant's paternity. *Id*. Here, the parties knew that plaintiff was not LMK's father from the time the child was born. Plaintiff cannot now claim that his ROPA action should succeed simply because he and defendant did not raise the matter of paternity in the judgment of divorce, despite knowing this fact since 2010. Nothing in *Glaubius* or the ROPA suggests that the Legislature intended to create such a loophole. Rather, the language of MCL 722.1441(2) is clear: a party may only challenge paternity either by doing so within three

years of a child's birth or prior to entering a judgment in a divorce action. Plaintiff knowingly and willfully did neither, thus extinguishing his right to challenge paternity of LMK.

Based on the foregoing facts, we additionally conclude that plaintiff is estopped from challenging paternity because he did not bring the issue to the court's attention in the divorce proceeding, despite knowing that he was not LMK's biological father. In *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 589; 939 NW2d 705 (2019), we explained that under the doctrine of laches, a party in an equitable action is estopped from bringing a claim if they "fail[] to do something which should be done under the circumstances or . . . fail[] to claim or enforce a right at a proper time." (Quotation marks and citation omitted). Such is the case here. Again, plaintiff knew he was not the child's father from day one. If he wished to challenge his paternity of LMK, he should have done so within three years of LMK's birth or during the divorce proceedings. MCL 722.1441(2).

Finally, we note that plaintiff admitted in the court below that he and defendant intentionally avoided making paternity an issue in the divorce proceedings in the "misguided" attempt to ensure that LMK could remain on plaintiff's health insurance. In doing so, it is our opinion that the parties essentially committed fraud upon the court. See *Matley v Matley (On Remand)*, 242 Mich App 100, 101; 617 NW2d 718 (2000) ("A fraud is perpetrated on the court when some material fact is concealed from the court or some material misrepresentation is made to the court."). Even if such is not the case, plaintiff agreed to raise LMK as his own son, and now seeks to break that agreement by claiming that MCL 722.1441(2) does not apply to him as a presumed father. We strongly disagree. Plaintiff cannot simply walk away from his role as LMK's father by claiming that because he effectively misled the court about LMK's parentage, he now has the right to bring a postjudgment ROPA action. That is not what *Glaubius* stands for, nor is it in accord with the plain language of the ROPA. We therefore hold that the trial court properly denied plaintiff's motion to revoke paternity.[4]

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

---

[4] Because we conclude that plaintiff's ROPA action was barred under MCL 722.1441(2), we decline to consider his argument that the court failed to adequately address whether denying his motion to revoke paternity was in LMK's best interests under MCL 722.1443(4).