*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHANNON BLACKMAN,

               Plaintiff-Appellee,

PUBLISHED
October 29, 2024
10:29 AM

v

No. 367240
Calhoun Circuit Court
LC No. 2019-002623-DS

TYLER DAVID MILLWARD,

               Defendant-Appellant.

Before: GADOLA, C.J., and BORRELLO and PATEL, JJ.

PATEL, J.

This case involves the interplay between the Rape Survivor Child Custody Act (RSCCA), 34 USC 21301, *et seq*., the implementing provisions in § 1445 of Michigan's Revocation of Paternity Act (ROPA), and other sections of the ROPA. The ROPA, MCL 722.1431, *et seq*. provides remedies for a survivor of sexual assault who becomes pregnant by, and thereafter is raising the child of, her assailant. Plaintiff relied on these remedies in the trial court to revoke the Affidavit of Parentage (AOP) signed by defendant and to terminate his parental rights under MCL 722.1445(2).

It is undisputed that defendant had a sexual relationship with plaintiff while he was her teacher, which was unlawful under MCL 750.520d(1)(e)(i), and for which he was convicted and is currently incarcerated. But the timeline is ambiguous, and while it is undisputed that defendant is the biological father of plaintiff's child, it is less clear whether the child was "conceived as a result of nonconsensual sexual penetration." MCL 722.1445(2) mandates that the trial court conduct a fact-finding hearing to determine whether "the child was conceived as a result of nonconsensual sexual penetration," which plaintiff must prove by clear and convincing evidence.

For the reasons stated in this opinion, we hold that plaintiff's motion to revoke the AOP was timely and that the trial court was not required to consider the child's best interests before granting the motion under MCL 722.1445(2). However, MCL 722.1445(2) requires the trial court to conduct a fact-finding hearing to determine whether the child was "conceived as a result of nonconsensual sexual penetration", which did not happen in this case. Taking judicial notice of the CSC-III convictions, under the facts of this case, was insufficient to meet this legal

-1-

requirement. We therefore vacate the trial court's May 19, 2023 order and remand this case for the court to conduct a fact-finding hearing and make its determination, consistent with this opinion.

## I. BACKGROUND

Many of the underlying facts in this case are undisputed. Defendant had an inappropriate sexual relationship with plaintiff while he was her high school teacher. After allegations of his conduct became known, he resigned from his employment with the high school on February 12, 2018. After defendant resigned, he continued having a sexual relationship with plaintiff, who was a sixteen year-old high school student. Plaintiff became pregnant and gave birth to the child on December 15, 2018. It is undisputed that defendant is the biological father of the child. The parties executed an AOP on December 17, 2018, just three days after the child's birth.

Defendant pleaded guilty to three counts of CSC-III in three different counties for separate incidents involving plaintiff in 2017. He was also convicted of witness intimidation, MCL 750.122(7)(b), for trying to convince plaintiff to lie to the police about their relationship in February 2018. Defendant is currently incarcerated with the Michigan Department of Corrections, with the earliest possible release date of November 2025.

In September 2019, the Calhoun County Prosecutor's office initiated this action seeking an order of child support against defendant. Defendant admitted that he was the child's father, but maintained that he was unable to provide support until he was released from incarceration. Following an evidentiary hearing in November 2019, the trial court adopted the family court referee's findings and found that the best interest factors enumerated in MCL 722.23 and the parenting time factors enumerated in MCL 722.27a supported awarding plaintiff sole physical and legal custody of the child. Defendant's parenting time was "reserved until the minor child has attained a more appropriate age to deal with parenting time in the prison." The court also entered a uniform child support order, but all charges and payments under the order were held in abeyance until 30 days after defendant's release from incarceration. Plaintiff, who was an indigent teenage mother at the time, was not represented by counsel and did not participate in the hearings.

In March 2023, defendant, acting in pro per, moved to establish parenting time and requested "one telephone call per week and one video visit per calendar month." He explained that his communication with the child would need to go through his mother, Dawn Rombaugh, because there was a no-contact order between plaintiff and defendant until the end of his prison sentence.

On April 17, 2023, the pro se plaintiff responded, arguing that parenting time should not be established. She stated:

> I was a victim in a crime and this child resulted out of this crime. [Defendant] was charged with CSC 3rd degree (student-teacher). I was the student . . . . I never agreed for his "3rd party contact" Dawn Rombaugh to give [the child] telephone with [defendant]. Nor did I give her permission to sign visitation paperwork for [the child] and [defendant] at the prison and she did. I called the warden and had those terminated. I was very young when this started and as I get older, I understand, it is not in the child[']s best interest to know his father. [The child]

-2-

should not have to carry this weight of his father[']s actions, and crime. [The child] is four years old, the recollection of [defendant] would be a faint memory. At this time, [the child] does not ask about this family and it is in his best interest to keep it that way. Dawn Rombaugh has been harassing and stalking us in our home town in which we live 45 minutes away . . . . I cut contact with this family months ago to better our lives and for [the child] and I's mental well-being . . . . [The child should not] grow up under the influence of a sex offender, or an incarcerated adult.

An evidentiary hearing on defendant's motion was scheduled for May 24, 2023.

Plaintiff subsequently secured legal counsel, and on April 28, 2023, she moved to: (1) revoke the AOP under MCL 722.1455(2)(a), and (2) "cancel the scheduled evidentiary hearing because the court is statutorily prohibited from granting [defendant] custody under MCL 722.25(2) or parenting time under MCL 722.27a(4) because the child was conceived as a result of [defendant's] criminal sexual conduct against [plaintiff]." Plaintiff argued:

> [Plaintiff] lacked family support from her own family at the time of her pregnancy and birth of the child. She signed an Acknowledgement of Parentage (AOP) affidavit after the minor child was born under duress from [defendant]. [Defendant's] acts of witness intimidation against [plaintiff], combined with her youth and vulnerability, led her to sign the AOP. There is no time limitation under MCL 722.1445(2)(c) to allow a victim of criminal sexual conduct that resulted in the conception of a child to raise her rights to revoke paternity of the offending parent. Even if there were such a time limitation under the provisions specific to children born from rape, the motion to revoke paternity is timely because [Blackman] is entitled to an extension of her time file such a motion based on the duress she was under at the time of the signing of the AOP.

On May 5, 2023, defendant, who was acting *in propria persona*, responded. Defendant argued that the child was not conceived as a result of nonconsensual sexual penetration because defendant's last day as a teacher was February 12, 2018, and "[plaintiff] and [defendant] both agreed that [the child] was conceived around March 15, 2018."

On May 8, 2023, the trial court held a brief hearing on plaintiff's motion, which the pro se defendant attended from prison via Zoom. Plaintiff's counsel argued that plaintiff's motion to revoke the AOP was authorized by the Child Custody Act (CCA), MCL 722.21 *et seq*., and the ROPA. Plaintiff's counsel further asserted that the court could take judicial notice of the fact that the child was conceived as a result of nonconsensual sexual conduct because defendant was convicted of CSC-III and was still serving time in prison. Defendant, on the other hand, argued that the statutes relied on by plaintiff did not apply because the child was conceived after he resigned from his teaching position.

The trial court agreed with plaintiff's arguments and concluded:

[T]he undisputed facts are that the defendant was convicted of CSC 3rd. He also was convicted of witness bribing or intimidation or interference in this particular matter. Court takes those as undisputed facts in this case.

-3-

The court would note that aside from his arguments during this time when this relationship occurred . . . the plaintiff was always a minor in these particular matters, and obviously—obviously suffering under that legal incapacity, if you would, and as a result the court does find that the motion is well taken. The court will grant the motion revoking the Affidavit of Parentage in this matter.

The court will determine that the defendant is not entitled to parenting time pursuant to MCL 722.1455 and the court will further cancel the referee hearing scheduled in this matter.

On May 19, 2023, the trial court entered an order consistent with its ruling at the hearing, ordering: (1) the AOP was revoked; (2) defendant had no parental rights to the child; (3) plaintiff may amend the child's birth certificate to reflect the revocation of paternity; (4) any order identifying defendant as the child's father, or indicating that he has a right to parenting time, were void; and (5) the evidentiary hearing scheduled for May 24, 2023, was canceled.

Defendant subsequently secured counsel and, on June 9, 2023, moved for reconsideration. In his motion for reconsideration, he argued that the trial court's order terminated his parental rights without a proper action being filed under the Probate Code (MCL 712A.19b, MCR 3.977, and MCL 710.51), his rights were terminated without proper due process, plaintiff did not prove her case by clear and convincing evidence, and the trial court erred by failing to consider whether terminating his parental rights was in the child's best interests. Defendant further argued that plaintiff's motion was time barred under MCL 722.1437(1), and she did not plead a proper request to extend the deadline or plead duress.

The trial court permitted plaintiff to file a response. Plaintiff argued that the motion was timely for the reasons stated in her original motion and supporting affidavit. Plaintiff further reiterated her arguments for why an evidentiary hearing was unnecessary under the facts of this case, where defendant was convicted of CSC-III for acts committed against plaintiff.

After considering all the arguments, the trial court denied the motion for reconsideration. In addition to its prior rulings, which it affirmed by adopting the reasons articulated in plaintiff's response, the trial court enunciated for the first time that plaintiff's claim was not time barred under MCL 722.1445(2) and MCL 722.1437(1). The court explained that it had not previously addressed whether plaintiff's affidavit supported a claim for duress to justify extending the statute of limitations because defendant had not raised the issue before his motion for reconsideration. The court concluded that plaintiff's motion and supporting affidavit established duress, justifying an extension, and thus denied defendant's motion for reconsideration on this basis as well. This appeal followed.

## II. THE FEDERAL RAPE SURVIVOR CHILD CUSTODY ACT AND THE IMPLEMENTING PROVISIONS OF MICHIGAN'S CHILD CUSTODY ACT AND REVOCATION OF PATERNITY ACT

Before delving into the merits of this case, a brief overview of the Rape Survivor Child Custody Act and the implementing provisions in Michigan's Child Custody Act and Revocation of Paternity Act are useful. At its core, this case deals with the remedies available to a survivor of

sexual assault who becomes pregnant by, and thereafter is raising the child of, her assailant. A discussion of these statutes provides guidance regarding the policy mandates put in place by the Legislature to address this scenario.

In 2015, Congress specifically authorized and incentivized states to pass laws to allow sexual assault survivors to terminate the parental rights of their offenders. The RSCCA authorizes the Attorney General to make grants to states that implement laws that allow the mother of any child that was conceived through rape to seek court-ordered termination of the parental rights of her rapist, upon clear and convincing evidence of rape. 34 USC 21303.[1]

The RSCCA defines the term "termination" to mean, "when used with respect to parental rights, a complete and final termination of the parent's right to custody of, guardianship of, visitation with, access to, and inheritance from a child." 34 USC 21301(2). The compelling state interest justification for the RSCCA was identified as preventing additional trauma to the crime victim and her child. Congress made the following findings, which are incorporated in the RSCCA at 34 USC 21302:

> (1) Men who father children through rape should be prohibited from visiting or having custody of those children.

> (2) Thousands of rape-related pregnancies occur annually in the United States.

> (3) A substantial number of women choose to raise their child conceived through rape and, as a result, may face custody battles with their rapists.

> (4) Rape is one of the most under-prosecuted serious crimes, with estimates of criminal conviction occurring in less than 5 percent of rapes.

> (5) The clear and convincing evidence standard is the most common standard for termination of parental rights among the 50 States, territories, and the District of Columbia.

> (6) The Supreme Court established that the clear and convincing evidence standard satisfies due process for allegations to terminate or restrict parental rights in *Santosky v. Kramer* (455 U.S. 745 (1982)).

> (7) Currently only 10 States have statutes allowing rape survivors to petition for the termination of parental rights of the rapist based on clear and convincing evidence that the child was conceived through rape.

---

[1] Congress found that "the clear and convincing evidence standard is the most common standard for termination of parental rights among the 50 States, territories, and the District of Columbia." 34 USC 21302(5).

(8) A rapist pursuing parental or custody rights causes the survivor to have continued interaction with the rapist, which can have traumatic psychological effects on the survivor, and can make it more difficult for her to recover.

(9) These traumatic effects on the mother can severely negatively impact her ability to raise a healthy child.

(10) Rapists may use the threat of pursuing custody or parental rights to coerce survivors into not prosecuting rape, or otherwise harass, intimidate, or manipulate them.

In 2016, Michigan passed a two-bill package that conformed Michigan's existing laws to the RSCCA by revising both the CCA, through 2016 PA 96, and the ROPA, through 2016 PA 178.

2016 PA 96 strengthened the language of the CCA at MCL 722.25(2) (regarding custody) and MCL 722.27a(4) (regarding parenting time) that had existed since 1993. The 2016 revision of the CCA recognized equivalent criminal convictions under other state or federal law and allowed, for the first time, a parent to prove by testimony, in the absence of a criminal conviction, that the child was conceived as a result of uncharged conduct equivalent to CSC.

2016 PA 178 revised the ROPA by adding subsections to MCL 722.1445 in order to meet the requirement under the federal RSCCA to ensure "termination of parental rights" of the assailant, as defined at 34 USC 21301(2). These subsections provide:

(2) If an action is brought by a mother who, after a fact-finding hearing, proves by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration, the court shall do 1 of the following:

(a) Revoke an acknowledgment of parentage for an acknowledged father.

(b) Determine that a genetic father is not the child's father.

(c) Set aside an order of filiation for an affiliated father.

(d) Make a determination of paternity regarding an alleged father and enter an order of revocation of paternity for that alleged father.

(3) Subsection (2) does not apply if, after the date of the alleged nonconsensual sexual penetration described in subsection (2), the biological parents cohabit and establish a mutual custodial environment for the child.

(4) As used in this section, "sexual penetration" means that term as defined in section 520a of the Michigan penal code, 1931 PA 328, MCL 750.520a. [MCL 722.1445(2)-(4).]

While the ROPA had previously included MCL 722.1443(14) to bar standing to an alleged father who had been convicted of CSC, the 2016 amendments granted a mother the authority to initiate an action to protect herself and the child by terminating her offender's parental rights.

With this background of the relevant statutes, we now address defendant's arguments on appeal.

## III. SECTION 1437 OF THE ROPA AND STATUTE OF LIMITATIONS

Defendant argues that plaintiff's motion to revoke the parties' AOP was untimely and not supported by sufficient evidence of duress to extend the limitations period. Defendant relies on § 1437, which deals, generally, with actions for revocation of AOPs. Section 1437 mandates that an action to revoke an AOP "be filed within 3 years after the child's birth or within 1 year after the date that the acknowledgment of parentage was signed, whichever is later." MCL 722.1437(1). However, a trial court may extend the time for filing an action to revoke an AOP if the filer can support, with an affidavit, that the action was not timely filed because of:

(a) Mistake of fact.

(b) Newly discovered evidence that by due diligence could not have been found earlier.

(c) Fraud.

(d) Misrepresentation or misconduct.

(e) Duress. [MCL 722.1443(12).]

In this case, the trial court held that § 1437(1) applies, but further concluded that plaintiff had met the burden of establishing duress to warrant extending the statute of limitations under MCL 722.1443(12)(e). While we affirm the trial court's ultimate conclusion that plaintiff's motion to revoke the AOP was timely, we do so for different reasons. We disagree that § 1437 is the controlling statute and, instead, hold that § 1445, which contains the provisions implementing the policy dictates of the RSCCA, controls.

Deciding which section of the ROPA controls is a matter of statutory interpretation. The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 367; 986 NW2d 451 (2022). "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "We accord to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute." *Guardian Environmental Servs, Inc v Bureau of Const Codes and Fire Safety*, 279 Mich App 1, 6; 755 NW2d 556 (2008). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz & Cohn LLP v City of Detroit,* 505 Mich 284, 294; 952 NW2d 358 (2020) (cleaned up). If a statutory term is undefined, it "must be accorded its plain and ordinary meaning[;]" but a legal term of art "must be construed in accordance with its peculiar and appropriate legal meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008), citing MCL 8.3a.

This Court has held that:

> [w]hen there is tension, or even conflict, between sections of a statute, this Court has a duty to, if reasonably possible, construe them both so as to give meaning to each; that is, to harmonize them. If the provisions of a statute cannot be entirely harmonized without some violation of the rules of statutory interpretation, the Court should adopt the interpretation that does the least damage to what otherwise appears to be plain language in the statute . . . . Statutes that relate to the same subject or that share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. The object of the *in pari materia* rule is to give effect to the legislative intent expressed in harmonious statutes. When there is a conflict between statutes that are read *in para materia* [sic], the more recent and more specific statute controls over the older and more general statute. [*O'Connell v Dir of Elections*, 316 Mich App 91, 98-99; 891 NW2d 240 (2016) (cleaned up).]

Section 1437, which concerns revocations of AOPs, limits the time to bring an action to revoke an AOP:

> (1) The mother, the acknowledged father, an alleged father, or a prosecuting attorney may file an action for revocation of an acknowledgment of parentage. An action under this section shall be filed within 3 years after the child's birth or within 1 year after the date that the acknowledgment of parentage was signed, whichever is later. [MCL 722.1437(1).]

It is undisputed that this case involves a revocation of an AOP. At first blush, it would seem that § 1437 would apply to the circumstances here.[2] But there are fundamental differences between § 1437 and § 1445(2) of the ROPA and, after closer review, we hold that § 1437 does not apply to an action brought under § 1445(2).

Core parts of § 1437 make it clear that this statute applies when, for whatever reason, the identity of the biological father is called into question after an AOP has been executed, and the statute provides a process and mechanism for revoking an AOP under these circumstances. For example, under subsection (4), a revocation action must be accompanied by an affidavit that states facts setting forth mistake of fact, newly discovered evidence, misrepresentation or misconduct, or duress in signing the AOP as a reason for the revocation. MCL 722.1437(4). Subsection (5) then instructs that, if a court finds the reasons under subsection (4) sufficient, "the court shall order

---

[2] Indeed, MCL 722.1425, which sets forth the governing provisions for certain actions under the ROPA, instructs that § 1437 governs an action to set aside an acknowledgment of parentage. However, § 1437 was enacted in 2012 and later amended in 2014, which is before subsections (2)-(4) of § 1445 were enacted in 2016 to adopt and implement the policy purposes of the RSCCA. Section 1437 is silent about actions to revoke an AOP under § 1445. As discussed in detail in this opinion, because § 1445 is the more recent and more specific statute, it controls over § 1437, which is the older and more general statute.

blood or tissue typing or DNA identification profiling", and mandates that the person filing the action has the burden of proving, by clear and convincing evidence, that the acknowledged father is not the father of the child. MCL 722.1437(5). Subsections (4) and (5), which are core implementing provisions of § 1437, clearly do not apply to circumstances where the biological identity of the father is not at issue. The mandatory genetic testing requirement under subsection (5), which is *required* if a court finds the affidavit supporting revocation to the AOP sufficient under subsection (4), is unnecessary where the child is a product of nonconsensual sexual penetration, such as this case, because the biological identity of the father is not in dispute.

On the other hand, § 1445(2), enacted to implement the policy purposes of the RSCCA, applies only in narrow and specific circumstances: when a child is conceived as a result of "nonconsensual sexual penetration." Under this scenario, the biological identity of the father is not in question. Instead, for public policy reasons, the Legislature has determined that an AOP can be revoked because the child was conceived as a result of nonconsensual sexual penetration.[3] MCL 722.1445(2)(a). The circumstances for when § 1445(2) applies, where biological identity is not at issue, are fundamentally different than the circumstances applicable to § 1437, where biological identity is the central question. These two provisions are mutually exclusive and, as a result, apply to disparate factual circumstances. Section 1437, enacted in 2012, applies generally, when an AOP is challenged. Section 1445(2), adopted in 2016 to implement the RSCCA, only applies in the specific circumstances where a rape victim bears the child of her assailant. As the more specific and later adopted statute, § 1445(2) controls here. We hold that § 1437, which contains the three-year statute of limitations that defendant relies on, is inapplicable to this case.

MCL 722.1445(2) allows a mother to bring an action to revoke an AOP, without reference to a timeframe. Instead, the statute mandates that, after a fact-finding hearing, if she can prove "by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration," the AOP will be revoked. Because the three-year limitations period in § 1437 does not apply in this case, we affirm the trial court's conclusion that plaintiff's motion to revoke the AOP was timely, although for different reasons.

## IV. SECTION 1443 OF THE ROPA AND A BEST INTERESTS ANALYSIS

Defendant also argues that MCL 722.1443 applies to this case and, specifically, that subsection (4) required the trial court to conduct a best-interests analysis to determine whether revocation of the AOP (and thus termination of defendant's parental rights) was in the best interests of the child. While we agree that certain provisions of § 1443 apply to actions initiated under § 1445(2), we disagree that the court was required to conduct a best-interests analysis under subsection (13). The provisions of subsection (13) directly conflict with the mandates of MCL 722.1445(2)-(4), which require revocation of an AOP if a court, after a fact-finding hearing, finds by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual

---

[3] Section 1445 also gives courts the power to determine that a genetic father is not the child's father, set aside an order of filiation for an affiliated father, and make a determination of paternity regarding an alleged father and enter an order revoking the paternity for that alleged father. MCL 722.1445(2)(b)-(d).

penetration. As the more specific and later enacted statute, the provisions of § 1445(2)-(4) control this action.

Plaintiff initially argues that § 1443, in its entirety, does not apply to actions initiated under § 1445(2). We reject this argument. Unlike our analysis of § 1437, § 1443 is not entirely mutually exclusive to § 1445(2). Our conclusion that § 1437 *is* mutually exclusive to § 1445(2) is premised on the fact that actions to revoke AOPs under the two statutes deal with fundamentally different factual predicates: in the former where biological identity of the acknowledged father is called into question, and in the latter where, although biological identity is not at issue, revocation of an AOP is allowed because of the Legislative policy determination that rapists should not have parental rights to the children they father through rape.

MCL 722.1443, on the other hand, governs the procedure for filing an action or motion for revocation of parentage, providing guidance for how an action or motion under the ROPA is to proceed, what procedural framework applies, and the relative duties of the parties and the court. It sets forth, among other things, in what court an action can be filed (§ 1443(1)), what actions a court may take (§ 1443(2)), and the impact of the judgment (§ 1443(3)). These provisions apply to actions brought under § 1445(2), as they simply provide logistical guidance about how a case should proceed and the parameters of the court's powers. Our conclusion that these provisions of § 1443 can and should apply to actions initiated under § 1445(2) is further bolstered by the fact that § 1445(2) is specifically mentioned in § 1443(11). Subsection (11) gives the trial court the discretion to order a person who files an action under the ROPA to post money or surety with the court for the costs of the action and attorney fees for a nonprevailing party—except that this discretion *does not extend to an action filed under § 1445(2)*.[4] By specifically naming and singling out that the bond-posting provision does not apply to actions initiated under § 1445(2), the implication is that other general provisions in § 1443 *do* apply.

With this in mind, we turn to the specific issue before us: whether § 1443(4) applies to actions initiated under § 1445(2). Section 1443(4) provides:

> (4) A court may refuse to enter an order setting aside a paternity determination, revoking an acknowledgment of parentage, determining that a genetic father is not a child's father, or determining that a child is born out of wedlock if the court finds evidence that the order would not be in the best interests of the child. The court shall state its reasons for refusing to enter an order on the record. The court may consider the following factors:
>
> > (a) Whether the presumed father is estopped from denying parentage because of his conduct.
> >
> > (b) The length of time the presumed father was on notice that he might not be the child's father.

---

[4] The court may, nonetheless, order a nonprevailing party to pay costs and reasonable attorney fees, including a mother who has brought an action under § 1445(2). MCL 722.1443(11).

(c) The facts surrounding the presumed father's discovery that he might not be the child's father.

(d) The nature of the relationship between the child and the presumed or alleged father.

(e) The age of the child.

(f) The harm that may result to the child.

(g) Other factors that may affect the equities arising from the disruption of the father-child relationship.

(h) Any other factor that the court determines appropriate to consider.

Section 1443(4) gives trial courts the discretion to refuse to enter an order revoking an AOP if the court finds evidence that the order would not be in the best interests of the child. The question before us is whether, similar to other provisions of § 1443, § 1443(4) applies to actions brought under § 1445(2). We hold that it does not.

As discussed above, § 1445(2) was enacted to implement the RSCCA. A key provision of the RSCCA was to provide a mechanism to sever the parental rights of a rapist who fathers a child. Cf. 34 USC 21302. The ROPA provides that mechanism: if a mother, "after a fact-finding hearing, proves by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration, the court shall . . . [r]evoke an acknowledgment of parentage for an acknowledged father." MCL 722.1445(2)(a). The directive to revoke the AOP is mandatory—the court *shall* revoke the AOP. This language does not leave any room for a trial court to exercise its discretion otherwise.

Section 1445(3) provides the only exception to the mandate that the court revoke the AOP: "Subsection (2) does not apply if, after the date of the alleged nonconsensual sexual penetration described in subsection (2), the biological parents cohabit and establish a mutual custodial environment for the child." Cohabiting after the birth of the child and establishing a mutual custodial environment for the child is the *only* way that the termination described in subsection (2) can be avoided. Section 1445(3) makes no mention of considering the best interests of the child. Rather, the only burden of proof is to establish "by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration." MCL 722.1445(2). Subsections (2)-(4) of § 1445 were adopted to implement the policy mandates in the RSCCA, which include a policy determination that "men who father children through rape should be prohibited from visiting or having custody of those children." 34 USC 21302(1).

We conclude that the trial court did not err by not conducting a best interests analysis under § 1443(4), because that statute does not apply to actions to revoke an AOP initiated under § 1445.

## V. EVIDENTIARY HEARING

Having determined that § 1437 and § 1443(4) do not apply to revocation of AOP actions brought under § 1445(2), we next consider whether the trial court was required to hold a fact-

-11-

finding hearing or whether it could make the necessary factual findings by taking judicial notice of defendant's CSC-III convictions arising out of his conduct against plaintiff. We hold that, under the facts of this case, the trial court clearly erred by failing to conduct a fact-finding hearing under § 1445(2) to determine whether the child was conceived as a result of nonconsensual sexual penetration.

"When reviewing a decision related to the Revocation of Paternity Act, this Court reviews the trial court's factual findings, if any, for clear error." *Glaubius v Glaubius*, 306 Mich App 157, 164; 855 NW2d 221 (2014). "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. Special deference is afforded to a trial court's factual findings that are based on witness credibility." *Hodge v Parks*, 303 Mich App 552, 555; 844 NW2d 189 (2014) (cleaned up). "[W]e review de novo the interpretation and application of statutory provisions." *Glaubius*, 306 Mich App at 164.

To reiterate, § 1445(2) provides: "If an action is brought by a mother who, after a fact-finding hearing, proves by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration, the court shall . . . (a) Revoke an acknowledgment of parentage for an acknowledged father." The clear and unambiguous language of the statute mandates that the trial court hold a fact-finding hearing and determine, by clear and convincing evidence, whether the child was conceived as a result of nonconsensual sexual penetration.

In this case, the trial court recognized that § 1445(2) required a fact-finding hearing, but dispensed with the hearing, and instead relied on defendant's multiple CSC-III convictions for the factual basis for its decision. But these convictions, premised on the fact that defendant was plaintiff's teacher at the time of the offenses, do not conclusively establish that the child was conceived as a result of nonconsensual sexual penetration. Defendant was convicted for conduct that occurred in 2017, but the child was not born until December 2018. Although a conviction of CSC-III, where the Legislature has mandated that the victim is legally unable to consent, can presumptively be considered evidence of nonconsensual sexual penetration, the 2017 conduct giving rise to the convictions in *this case* does not link to the acts in which the child was conceived.

Plaintiff also argues that § 1445(2) expands a mother's ability to bring an action to revoke an AOP and does not necessarily require a conviction of CSC or similar conduct in another jurisdiction, just clear and convincing evidence of such conduct. We agree that the mother does not need to rely on a criminal conviction, and can instead present clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration to get a court order revoking an AOP under § 1445(2). This would include evidence of conduct, which if charged and convicted, would lead to a CSC conviction.

Plaintiff further argues, and the trial court agreed, that the court could take judicial notice of the fact that defendant was plaintiff's teacher at the time the child was conceived, thus meeting the elements for CSC-III at the time, even though uncharged. The trial court reasoned that this conduct sufficed to establish that the child was conceived as a result of nonconsensual sexual penetration. While we agree that facts establishing CSC-III, though uncharged, could establish that the child was conceived as a result of nonconsensual sexual penetration, we disagree that the trial court could take judicial notice of these facts here because they are disputed by defendant.

-12-

Defendant argues that he resigned as a teacher in February 2018, before the child was conceived, and so could not have been convicted of CSC-III for acts that led to the child being conceived.

This factual dispute underscores the need for a fact-finding hearing. Under due process principles, "[t]he opportunity to be heard does not mean a full trial-like proceeding, but it does require a hearing to allow a party the chance to know and respond to the evidence." *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). A party confronted with damaging evidence is hamstrung without the ability to "respond to the evidence" by presenting evidence that tends to contradict or undermine the damaging evidence.

The trial court clearly erred by failing to conduct a fact-finding hearing in this case to determine, by clear and convincing evidence, whether the child was conceived as a result of nonconsensual sexual penetration. We remand this case to the trial court to conduct this hearing and make its determination.[5]

## VI. CONCLUSION

Sections 1437 and 1443(4) do not apply to revocation of AOP actions brought under § 1445(2), and thus plaintiff's motion to revoke the AOP was timely and the trial court was not required to consider the child's best interests before granting the motion. However, the trial court erred by failing to conduct a fact-finding hearing in this case to determine, by clear and convincing evidence, whether the child was conceived as a result of nonconsensual sexual penetration. We vacate the trial court's May 19, 2023 order and remand this case for the court to conduct a fact-finding hearing and make its determination, consistent with this opinion. We retain jurisdiction.

/s/ Sima G. Patel
/s/ Michael F. Gadola
/s/ Stephen L. Borrello

---

[5] We note that, while MCL 722.1445(4) defines "sexual penetration" as the term is defined in section 520a of the Michigan Penal Code, the statute does not define "nonconsensual". Plaintiff and amicus curiae Michigan Coalition to End Domestic Violence and Sexual Violence both argue that what constitutes "nonconsensual" conduct may go beyond the scope of conduct that is punishable under the Michigan Penal Code. We do not address these arguments because they were not first considered by the trial court. On remand, we direct the court to address the parameters of "nonconsensual" conduct in its deliberation during its fact-finding hearing and in its subsequent opinion and order.

**Court of Appeals, State of Michigan**
# ORDER

SHANNON BLACKMAN V TYLER DAVID MILLWARD

Docket No.   367240

LC No.      2019-002623-DS

Michael F. Gadola
Presiding Judge

Stephen L. Borrello

Sima G. Patel
Judges

         For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings. We retain jurisdiction. After the remand proceedings conclude, we will review the decisions that the trial court made during those proceedings and consider any remaining issues in this appeal. Any challenges to the trial court's decisions on remand must be raised in this appeal. Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal. The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

         Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded. As stated in the accompanying opinion, the trial court shall conduct a fact-finding hearing to determine, by clear and convincing evidence, whether the child was conceived as a result of nonconsensual sexual penetration. The proceedings on remand are limited to this issue.

         The parties must serve copies of their filings in the trial court on this Court. Appellant must file with this Court copies of all orders entered on remand within seven days of entry.

         Appellant must ensure the transcript of all proceedings on remand is filed in the trial court and this Court within 21 days after completion of the proceedings.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

October 29, 2024
Date

Chief Clerk